# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I, Miguel A. Garza, Jr., am currently employed by U.S. Customs and Border Protection (CBP), Office of Field Operations (OFO) assigned to the Area Port of Charlotte, North Carolina. I have been employed with CBP since May 28, 2007, and have over 19 years of combined law enforcement experience, including extensive experience conducting investigations into violations of the Immigration and Nationality Act (INA) and criminal violations of Title 8 and Title 18 of the United States Code, with a focus on immigration fraud and fraudulent document cases.

2. My duties as a Supervisory CBP Officer (Area Port Director) include, but are not limited to, identification, arrest, and removal of aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of our immigration laws. These duties also include prosecuting violators who are identified as possessing fraudulent documents for the purposes of unlawfully obtaining employment in the United States.

3. This affidavit is submitted in support of a criminal complaint charging **Kaan ELMAS**, a United States Legal Permanent Resident (Alien Registration Number A# xxx-xxx-578), born September 10, 1992, in Turkey, with violations of federal law, specifically 18 U.S.C. § 1546(a) (Fraud and misuse of visas, permits, and other documents)

4. On Thursday, July 9, 2026, **Kaan ELMAS** applied for entry into the United States at the Charlotte-Douglas International Airport Port of Entry, Charlotte, North Carolina, arriving on flight #2248 from Cancun, Mexico. **Kaan ELMAS** presented himself for primary inspection and was referred to CBP Secondary for further examination. He did

not declare or present the documents described below to the CBP Officer during the CBP Primary inspection.

5.     During the secondary inspection, a lawful border search of **Kaan ELMAS's** baggage revealed that he was in possession of two fraudulent Mexican passports. The passports were concealed inside the clothing pocket of a pair of shorts, which were found inside his luggage. The passports are described as follows:

- The first Mexican passport bearing the name Cihan Omur DEMIRAL with a Date of Birth of April 27, 1983, a Mexican Passport Number N17868487 and CURP Personal No. DEXC830427HNEMXH08, Place of Birth: Boston, USA.

- The second Mexican passport bearing the name Aslan ABUBAKAROV with a Date of Birth of April 01, 1983, a Mexican Passport Number N14276037 and CURP Personal No. AUXA830401HNEBXS06, Place of Birth: Boston, USA.

Computer checks and document examination confirmed that these Mexican Passports were fraudulent in that they are counterfeit. In addition, biometric analysis conducted through CBP databases identified that one of the subjects named on the counterfeit Mexican passport—Cihan Omur DEMIRAL—is in fact a Turkish citizen. Records show that Cihan Omur DEMIRAL holds a B1/B2 visa (Visa Foil: R3141886) and a Turkish passport (U23094952). His visa application indicated his date of birth as April 27, 1983, and place of birth as Istanbul, Pendik, Turkey (FIN: 1105271643). Further, CBP records confirm that Cihan Omur DEMIRAL has previously been admitted to the United States as a B1/B2 Turkish citizen, with his last entry on March 30, 2025, and departure from Miami to Istanbul on April 5, 2025.

6.      A contemporaneous lawful border search of an iPhone in the possession of **Kaan ELMAS** revealed text messages in which **Kaan ELMAS** was communicating on behalf of his friend "Omur". In these messages, **Kaan ELMAS** stated that he could speak in person and directed the recipient to switch to the encrypted messaging application Signal. The search further revealed Signal communications to a user identified as "Afonso SVPPB" discussing the process of purchasing and obtaining fraudulent documents. As set forth below, these communications demonstrate **Kaan ELMAS's** prior knowledge that the documents were fraudulent and his active role in facilitating their acquisition and transport.

7.      True and correct copies of relevant conversations recovered from **Kaan ELMAS's** device are set forth below. These messages show **Kaan ELMAS** negotiating on behalf of "Omur," discussing the promised identification documents, the transfer of money, and the arrangements to meet and switch to the encrypted Signal app. The content of these messages is summarized as follows:

- Exhibit 1: Messages referencing the promised IDs, payment, and ELMAS acting on behalf of "Omur."



- Exhibit 2: Messages arranging to meet in person, discussing the involvement of a Russian individual, and the instruction to switch to Signal for further communication.



8. During the inspection, **Kaan ELMAS** admitted that he was bringing the documents back from Cancun, Mexico, for a friend. He further stated that he obtained the documents from an unknown man at a 7-Eleven convenience store in Cancun, Mexico. Specifically, **Kaan ELMAS** stated that he met an unknown subject wearing a white t-shirt outside the 7-Eleven convenience store, who provided him the documents. The documents were concealed inside the clothing pocket of a pair of shorts, which were found inside his luggage upon secondary inspection.

9. On July 9, 2026, at approximately 1631 hours, **Kaan ELMAS** was advised of his Miranda rights. He invoked his right to counsel and declined to answer any further questions regarding the fraudulent documents.

10. Title 18, United States Code, Section 1546(a) criminalizes the knowing possession or importation of fraudulent immigration documents. Specifically, the statute prohibits any person from knowingly possessing, obtaining, or bringing into the United States any document (including a foreign passport) that is forged, counterfeited, altered, or fraudulently obtained, when that document is prescribed by law for entry into the United States, proof of authorized stay, or related immigration purposes. This law exists to protect the integrity of the U.S. immigration system. Fraudulent passports like the ones recovered here can be used by others to impersonate individuals, gain unlawful entry, obtain benefits, or commit identity fraud. Even when not presented for entry by the possessor, knowingly transporting and concealing such documents undermines border security and immigration enforcement. In this case, **Kaan ELMAS's** actions, traveling to Mexico, picking up clearly fraudulent passports at a 7-Eleven for his friend "Omur," hiding them in his luggage without declaration, and communicating about the delivery via encrypted means—demonstrate the exact conduct Congress sought to prohibit under this statute.

11. Based on my training and experience, the circumstances of this case, including **Kaan ELMAS's** recent travel to Mexico, his receipt of the documents from an unknown individual at a convenience store as arranged for his friend "Omur," his failure to declare the documents upon entry, the clearly fraudulent nature of the passports, and the digital evidence on his phone showing prior knowledge, coordination, and discussions

Case 3:26-cr-00155-SCR-DCK     Document 1-1     Filed 07/10/26     Page 5 of 6

about purchasing and obtaining the documents, establish probable cause that **Kaan ELMAS** knowingly possessed fraudulent documents in violation of 18 U.S.C. § 1546(a).

12.     Based upon the foregoing facts and circumstances, your Affiant respectfully requests that the Court issue a criminal complaint and arrest warrant for **Kaan ELMAS** for said violation.

I declare that the above information is true and correct to the best of my knowledge. Executed on this 10th day of July 2026, in Charlotte, North Carolina.

Miguel A. Garza, Jr.
Supervisory CBP Officer (Area Port Director)
Office of Field Operations
U.S. Customs and Border Protection

*This affidavit was reviewed by AUSA Kenny Smith and AUSA Daniel Ryan*

Subscribed and sworn before me, this 10th day of July 2026.

THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE